UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHARISE CARLOS,

    Plaintiff,

                                          04 CV 8826 (DC) (ECF Case)

-against-

                                          COMPLAINT

THE CITY OF NEW YORK, CAPTAIN
GERARD STAPLES (Tax ID 912487), LIEUT.
PATRICK DUNLEAVY (Tax ID 887237), SGT.
PAUL T. DALY (Shield 0696, Tax ID 888611),
DETECTIVES DAMIEN BRADSHAW (Shield
2141, Tax ID 914065),  MICHAEL BRANDEL    JURY TRIAL DEMANDED
(Shield 3983, Tax ID 891312), RONALD
CHAMBERS (Shield 2094, Tax ID 900799),
SERGIO ALVAREZ (Shield 0314, Tax ID 894513),
ELIJAH BROOKS (Shield 0377, Tax ID 897078),
HENRY FRIEDMAN (Shield 2759, Tax ID
895458), and ERICH OTTENS (Shield 3562, Tax
ID 891894), and POLICE or CORRECTION
OFFICERS JANE DOES 1-2,

        Defendants.
----------------------------------------------------------------X

Plaintiff CHARISE CARLOS, by her attorney, Joel Berger, Esq., for her Complaint alleges, upon information and belief, as follows:

NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States by employees of the City of New York, including an unlawful and unreasonable entry into and search of plaintiffs' dwelling, false imprisonment, false arrest, malicious prosecution, and an unlawful and unreasonable strip-search.

JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b).

PENDENT JURISDICTION

5. This Court also has jurisdiction over plaintiffs' state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On July 29, 2004, within ninety days after the claims alleged in this complaint arose, a Notice of Claim verified by plaintiffs was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7. At least thirty days have elapsed since the service of plaintiffs' Notice of Claim, and adjustment of the claim has been neglected or refused by defendant City of New York.

8. This action is being commenced within one year and ninety days after the happening of the events upon which plaintiff's claims are based.

JURY DEMAND

9. Plaintiff demands a trial by jury in this action.

PARTIES

10. Plaintiff Charise Carlos is citizen of the United States and the State of New York. She is an African-American woman, and the mother of four children. She has no criminal or juvenile record of any kind, having never been arrested prior to the incident described herein. She has lived at the same address, without incident, for eight years: 2175 First Avenue, Apartment 6D (the New York City Housing Authority's Jefferson Houses). She is gainfully employed as a security guard.

    11. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the New York City Police Department (NYPD), a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including individually named defendants herein.

12. Defendant City of New York also operates the New York City Department of Correction (DOC), a department or agency of defendant City of New York responsible for the hiring, training, supervision, discipline and retention of correction officers and supervisory correction officers, including individually-named defendants herein.

    13. At all times relevant herein, individual defendants Capt. Gerard Staples (Tax ID 912487), Lt. Patrick Dunleavy (Tax ID 887237) and Sgt. Paul T. Daly (Shield 696, Tax ID 888611) were supervisory officers employed by the NYPD and assigned to narcotics units in Upper Manhattan including units covering Harlem and East Harlem.

    14. At all times relevant herein, defendants Damien Bradshaw (Shield 2141, Tax ID

914065), Michael Brandel (Shield 3983, Tax ID 891312), Ronald Chambers, (Shield 2094, Tax ID 900799), Sergio Alvarez (Shield 0314, Tax ID 894513), Elijah Brooks (Shield 0377, Tax ID 897078), Henry Friedman (Shield 2759, Tax ID 895458) and Erich Ottens (Shield 3562, Tax ID 891894) were detectives employed by the NYPD and were also assigned to narcotics units in Upper Manhattan including units covering Harlem and East Harlem.

15. At all times relevant herein, individual defendants Jane Does 1-2 were employed by the NYPD or DOC.  Plaintiff does not know the actual names of Jane Does 1-2 at this time.

16. At all times relevant herein, the individual defendants were acting as agents, servants and employees of defendant City of New York and the NYPD or DOC.

17. At all times relevant herein, defendants were all acting under color of state law.

FACTS

18. On Wednesday, May 19, 2004, at approximately 7:00 A.M., Ms. Carlos was asleep in her dwelling when numerous NYPD officers, dressed in riot gear and with guns drawn, broke through the lock on her door and burst into the apartment.

19. The officers kept yelling "where are the drugs, where are the guns?" or words to that effect.

20. The officers handcuffed plaintiff and her boyfriend (who was not a resident of the apartment), and kept them handcuffed for approximately two hours while thoroughly searching the back area of the apartment.

21. At no time did the police display a search warrant to plaintiff.

22. Plaintiff and her boyfriend were then taken downstairs and placed in a police van, while the police continued to search.  Approximately an hour later they were taken to the 25th Police Precinct, 120 East 119th Street, New York, NY 10035.

23. The search of plaintiff's dwelling did not uncover any contraband justifying the raid on the apartment.

24. If the officers had a warrant for a "no knock" entry into and search of plaintiff's dwelling, the information relied upon to obtain the warrant was untrue.

25. The police recklessly proceeded to obtain and execute the warrant without taking the most basic steps to verify the reliability of the informant providing the information and the accuracy of that informant's allegations.

26. One of the supervisory officers informed plaintiff that she was being arrested because a tiny remnant of a marijuana cigarette, or roach, had allegedly been found in an ashtray in the apartment.

27. Plaintiff was never charged in court with any such offense.  After approximately 27 hours in police custody, she was released without even being brought before a judge.  Her boyfriend was released in the same manner.

28. However, before being released, plaintiff was taken from the 25th Precinct to Manhattan Central Booking, where she was illegally strip-searched.  The officers who ordered and/or participated in the illegal strip-search of plaintiff include individual defendants herein Jane Does 1-2.

29. At Manhattan Central Booking Ms. Carlos was required to lower her pants down to the ankles while an officer ran a hand around the edge of her panties.  She was also required to take off her bra and display her breasts.

30. This strip-search was patently illegal, under well-settled constitutional law in this jurisdiction. It also patently violated NYPD and DOC regulations.

31. The strip-search revealed no contraband of any kind.

32. At approximately 9:30 or 10 A.M. on Thursday, May 20, 2004, after approximately 27 hours in custody, Ms. Carlos and her boyfriend were simply released from Manhattan Central Booking and told to go home.

33. When Ms. Carlos arrived home she learned from a neighbor that her apartment had been burglarized in her absence and that the neighbor had already reported the burglary to the police.

34. Police Safety Area (PSA) 5 was supposed to have guarded Ms. Carlos's apartment until a new lock was placed on the door, but failed to do so.  The property taken (TV sets, DVD players, jewelry and cash) was worth approximately $3,500.

35. If the police had a warrant authorizing a "no knock" entry and search of plaintiff's dwelling, they failed to fulfill their obligation -- recognized in NYPD Commissioner Kelly's public promises of more than a year ago -- to make sure that the information upon which they had sought the warrant was accurate before executing it.

36.   In response to the tragic death of Ms. Alberta Spruill in Harlem on May 16, 2003, the NYPD conceded that it has an obligation to continue checking on the reliability of the informant, and the reliability of the allegations made by that informant, even after a "no-knock" warrant is issued.  See Commissioner Kelly's report to the Mayor on the Spruill case (May 30, 2003) at 8, 9, 10, 12 and 20, which in turn quotes Chief of Patrol Estavillo's memorandum of October 23, 2002 (Memorandum Number 567s.02).  See also Commissioner Kelly's testimony before the New York City Council Committee on Public Safety (June 4, 2003) at 41, 48, 88-89.

37.   In this case the both the informant and the informant's allegations were highly unreliable.

38. The kind of inquiry required by the NYPD in the wake of Ms. Spruil's death (see 36, above) would have revealed that both the informant and the informant's allegations were highly unreliable.

39. Despite the promises of reform in the aftermath of the Spruill case, "mistaken" searches of the sort inflicted upon plaintiff have continued to be common in New York City because the NYPD, demonstrating deliberate indifference to the privacy rights of the City's residents and especially its African-American and Latino residents, especially in predominantly African-American and Latino neighborhoods, has placed excessive and unwarranted reliance upon the word of untrustworthy informers, many of whom are criminals and drug addicts.

40. "Mistaken" searches of the sort inflicted upon plaintiff have become so common in New York City that the NYPD has actually created a squad to fix broken doors, locks and windows in such cases. See NYPD Patrol Guide, PG 214-20 (effective January 1, 2000). As noted in 33-34, above, the NYPD failed in this case to take the steps required by PG 214-20.

41. The incident forming the basis for this action has left plaintiff traumatized, fearful for her safety and extremely distrustful of the police, and interfered with her ability to sleep.

42. The officers who supervised and/or participated in the entry into and searching of plaintiff's apartment and her arrest include the individual defendants herein: Captain Staples, Lieutenant Dunleavy, Sergeant Daly, and Detectives Bradshaw, Brandel, Chambers, Alvarez, Brooks, Friedman and Ottens.

43. Compliance with the directives of Commissioner Kelly and Chief of Patrol Estavillo (see 36, above) placed a particularly heavy responsibility upon the supervisors -- Captain Staples, Lieutenant Dunleavy and Sergeant Daly -- to make sure that all NYPD policies and procedures for ascertaining the reliability of the informant and the allegations made by the informant were accurate, before applying for the warrant and in the period between obtaining the warrant and executing it. Captain Staples, Lieutenant Dunleavy and Sergeant Daly failed to discharge that responsibility.

44. It is believed that Sergeant Daly ordered the arrest of plaintiff. He did so, despite misgivings openly voiced by some of the detectives at the scene, in an effort to provide some justification for the incident. As noted above ( 27 and 32), the arrest of plaintiff (and her boyfriend) never resulted in any charges being filed in court. It would appear that either Sgt. Daly changed his mind and had the arrest voided, or NYPD supervisors at a higher level overruled him and ordered the arrest voided, or the Manhattan District Attorney's office declined to prosecute.

FIRST CLAIM FOR RELIEF

45. Plaintiff repeats and realleges the allegations contained in 1-44.

46. The conduct of defendants alleged herein violated plaintiff's rights guaranteed by 42 U.S.C. §

1983, the First, Fourth, Fifth Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

SECOND CLAIM FOR RELIEF

47. Plaintiff repeats and realleges the allegations contained in 1-44.

48. The acts complained of herein are a direct and proximate result of the failure of the City of New York, the NYPD and DOC properly to select, train, supervise and discipline its officers and supervisory officers.

49. The failure of the City of New York, the NYPD and DOC to properly select, train, supervise and discipline its officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by its officers and supervisory officers.

50. The official policies, practices and customs of the City of New York and the NYPD alleged in 1-43 and 44-48 violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

THIRD CLAIM FOR RELIEF

51. Plaintiff repeats and realleges the allegations contained in 1-44 and 48-49.

52. The conduct toward plaintiff Charise Carlos alleged herein constituted illegal search and seizure, false imprisonment, false arrest, malicious prosecution, sexual abuse, the intentional, willful and malicious infliction of severe physical, mental and emotional distress, and employee negligence.

53. The conduct toward plaintiff Charise Carlos alleged herein subjected her to shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, physical and emotional trauma, pain, and suffering, and loss of property.

FOURTH CLAIM FOR RELIEF

54. Plaintiff repeats and realleges the allegations contained in 1-44, 48-49 and 52-53.

55. At all times relevant herein, all of the individually-named defendants were on duty and were acting within the scope of their employment as agents, servants and employees of defendant the City of New York, which is therefore responsible for their conduct under common law, state law, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

PRAYER FOR RELIEF

WHEREFORE, plaintiff CHARISE CARLOS respectfully request judgment against

defendants as follows:

(a) Compensatory damages in the amount of $1,000,000 against all defendants, jointly and severally;

(b) Punitive damages in the amount of $1,000,000 against all of the individually-named defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 8, 2004

/s/ Joel Berger
JOEL BERGER (JB-3269)

360 Lexington Avenue, 16th Floor
New York, NY 10017
(212) 687-4911

ATTORNEY FOR PLAINTIFF